UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHAMEEN A. DEAN,

        Petitioner,

v.                          Case No. 3:19-cv-1191-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## <u>ORDER</u>

### I. Status

Petitioner Shameen A. Dean, an inmate of the Florida penal system, initiated this action on October 18, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] Dean also filed a memorandum of law (Memorandum; Doc. 9). In the Petition, Dean challenges a 2009 state court (Duval County, Florida) judgment of conviction for first-degree murder, armed robbery, and armed burglary. He raises nine grounds for relief. <u>See</u> Petition at 4-24. Respondents submitted a memorandum in opposition to the Petition. <u>See</u> Response (Doc. 11). They also submitted

---

[1] <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

exhibits. See Docs. 11-1 through 11-4. Dean filed a brief in reply. See Reply (Doc. 16). Dean's Petition is ripe for review.

## II. Relevant Procedural History

On December 10, 2008, the State of Florida charged Dean by information with second-degree murder (count one), armed robbery (counts two and three), armed burglary (count four), and possession of a firearm by a convicted felon (count five). Doc. 11-1 at 30-31. The State later charged Dean with the same offenses in an indictment: first-degree murder (count one), armed robbery (counts two and three), armed burglary (count four), and possession of a firearm by a convicted felon (count five). Id. at 51-54. The State also filed a notice of intent to seek the death penalty, which it withdrew when Dean waived his right to a twelve-person jury. Id. at 55, 80. Dean proceeded to a trial on counts one through four, and on December 3, 2009, a jury found him guilty as to all counts. Id. at 83-89. On December 18, 2009, the trial court sentenced Dean to concurrent mandatory minimum terms of life imprisonment. Id. at 223-33.

On July 12, 2010, Dean filed a Florida Rule of Criminal Procedure 3.800(b)(2) motion, arguing that the trial court illegally sentenced him to mandatory minimum terms of life imprisonment for counts two through four.

2

Doc. 11-3 at 15-18. The trial court denied Dean's Rule 3.800(b)(2) motion without prejudice. Id. at 19. On direct appeal, Dean, with the benefit of counsel, filed an initial brief, arguing that the trial court erred when it: denied his Rule 3.800(b)(2) motion (ground one); limited the defense's cross-examination of a witness (ground two); and allowed the State to admit an autopsy photograph (ground three). Id. at 28-50. The State filed an answer brief. Id. at 52-74. On January 24, 2011, the First DCA affirmed Dean's convictions, but reversed his mandatory minimum sentences for counts two through four and remanded for the entry of twenty-five-year mandatory minimum sentences on those counts. Id. at 81; onlinedocketsdca.flcourts.org, Shameen A. Dean v. State of Florida, 1D10-230 (Fla. 1st DCA). On March 22, 2011, the First DCA granted the State's motion for rehearing, withdrew its January 24th opinion, and affirmed Dean's convictions and sentences in light of Mendenhall v. State, 48 So. 3d 740 (Fla. 2010).[3] Doc. 11-3 at 80-81. The court issued the mandate on April 19, 2011. Id. at 83. Dean invoked the discretionary jurisdiction of the Florida Supreme Court, id. at 85-86, and on

---

[3] In Mendenhall, the Florida Supreme Court held that a trial court may impose a mandatory minimum sentence within the range of twenty-five years to life pursuant to Florida Statutes section 775.987(2)(a)(3) (10-20-Life), even if the mandatory minimum sentence exceeds the statutory maximum sentence for the offense. 48 So. 3d at 742.

3

July 6, 2011, the Florida Supreme Court dismissed Dean's petition for review, id. at 87.

On April 5, 2012, Dean filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Id. at 95-114. Dean alleged counsel was ineffective when he failed to: file a motion to suppress evidence obtained from a search in which law enforcement obtained involuntary consent to search Dean's house (ground one); call alibi witnesses Bernard Jordan and "Nardo" (ground two); withdraw as counsel because of a conflict of interest (ground three); object to testimony from a DNA analyst (ground four); and ensure the trial court properly determined Dean's competency (ground five). Id. Dean filed an amended Rule 3.850 motion on March 20, 2013, raising an additional claim that counsel was ineffective when he misadvised Dean about his right to a speedy trial (ground six). Id. at 118-24. On January 15, 2014, Dean filed a second amended Rule 3.850 motion, raising an additional four grounds for relief. Id. at 125-39. He alleged counsel was ineffective when he failed to: challenge the probable cause affidavit for the search warrant (ground seven); challenge the search of Dean's house where law enforcement exceeded the boundaries of the location described in the search warrant (ground eight); object to Dean's arrest where law

4

enforcement did not have an arrest warrant (ground nine); and interview or call exculpatory witness Heather Gwin (ground ten). Id. On April 18, 2016, the postconviction court dismissed the claims in grounds seven through ten as untimely and ordered the State to respond to grounds one through six. Id. at 180-81. The State filed a response, id. at 186-206, and on January 19, 2017, the postconviction court summarily denied relief, Doc. 11-4 at 40-171. The First DCA per curiam affirmed the denial of relief without a written opinion on January 25, 2019, id. at 175, and issued the mandate on February 22, 2019, id. at 177. Dean filed a motion to recall the mandate, which the First DCA denied on April 23, 2019. Id. at 181-88.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations,

5

which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Dean's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and

'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal

courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds

another layer of deference — this one to a state court's decision — when we

are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As

such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Dean alleges that counsel was ineffective when he failed to file a motion to suppress a gun recovered during what he contends was an illegal search. Petition at 4. According to Dean, law enforcement did not obtain voluntary consent from his girlfriend, Quitana Little, to search her residence. <u>Id.</u> He contends at 3:00 a.m., officers arrived at Little's residence; "[n]umerous officers, some armed with machine guns, surrounded the home and shouted orders for Little to sign a [c]onsent [f]orm for a search of the residence." <u>Id.</u> Dean asserts officers told Little that if she did not sign the form, they would call the Department of Children and Families (DCF) to "take[] away" her children. <u>Id.</u> at 4-5.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 97-99. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State's response stated in pertinent part:

In the case sub judice, Ms. Little testified that although the Defendant was allowed to stay in her home, he did not have his own key and could not enter the premises unless she was there. The consent form that Ms. Little signed authorizing the search of her home was admitted into evidence during the trial. Ms. Little also testified that she was not threatened into signing the consent form to search her home. Ms. Little testified that although she was hesitant at first, when informed that she was interfering with a homicide investigation, she told the detectives that she did not have anything to hide and she showed them a box of bullets that were in a trash can after they found the firearm. Thus, the search was a consensual search and a motion to suppress would not have been successful.

Additionally, the Defendant had no standing to contest the search of Ms. Little's home. The law is clear that for a defendant to have standing to challenge a search, he or she must show a proprietary or possessory interest in the area of search or that there are other factors which create an expectation of privacy which society is willing to recognize as reasonable. Ellerbee v. State, 87 So.3d 730, 746 (Fla. 2012). Thus, in order to invoke the Fourth Amendment to suppress a search, a defendant must demonstrate that he or she had a subjective expectation of privacy in the location searched and that the expectation was reasonable or legitimate. Hicks v. State, 852 So.2d 954, 959 (Fla. 5[th] DCA 2003). There is no bright line test or standard for making a determination of whether or not a defendant had a reasonable expectation of privacy in the premises searched. State v. Brown, 575 So.2d 763, 764 (Fla. 4[th] DCA 1991). However, short term invitees or temporary visitors are generally unable to advance a position of privacy with success. Id.

14

Additionally, a defendant who had a permanent residence and was merely a visitor in a third party's home did not have standing to challenge the search of the home even though the defendant kept some clothing there, was free to come and go with the use of a hidden key and spent occasional nights there as a guest. McCauley v. State, 842 So.2d 897, 900 (Fla. 2[d] DCA 2003) [(]citing State v. Mallory, 49 So.2d 1222, 1224 (Fla. 2[d] DCA 1982)[)].

If the record conclusively refutes a factual basis for a motion to suppress, it is not ineffective assistance of counsel to fail to file such a motion. Jackson v. State, 640 So.2d 1173 (Fla. 2[d] DCA 1994). Furthermore, if case law demonstrates that a motion to suppress evidence would not have been successful, th[e]n a claim of ineffective assistance of counsel fails. Ramos v. State, 559 So.2d 705 (Fla. 4[th] DCA 1990). In fact, even assuming arguendo, that counsel was ineffective for failing to file a motion to suppress, the court can find that even if filed, the motion to suppress would not have been granted in light of the evidence. Gettel v. State, 449 So.2d 413, 414 (Fla. 1984). In such a situation, the defendant fails to demonstrate that he suffered prejudice due to counsel's failure to file a motion to suppress. State v. Freeman, 796 So.2d 574, 578 (Fla. 2[d] DCA 2001), citing Gettel at 441, which held that because suppression would not have been properly granted, the defendant does not establish, as required by Strickland, that he was prejudiced by counsel's failure to file a motion to suppress. Post-conviction relief is properly denied where the record rebuts a defendant's clam of ineffective assistance. Ferrell v. State, 29 So.3d 959, 971 (Fla. 2010). Likewise, an attorney is not ineffective for failing to make a meritless objection. Lugo v. State, 2 So.3d 1 (Fla. 2008).

Strategic decisions do not usually constitute ineffective assistance of counsel. Jackson v. State, 975 So.2d 485, 486 (Fla. 2[d] DCA 2007). Generally, an attorney's strategic decisions require an evidentiary hearing to determine whether counsel's decision was the product of strategy or ineptitude. Id. However, an evidentiary hearing is not required when it is obvious from the record that counsel's decision was strategic. Id. For example, counsel's strategic decision not to file pre-trial motions regarding the defendant's statement because such motion would not have been meritorious was not ineffective assistance of counsel. Davis v. State, 928 So.2d 1089, 1116 (Fla. 2005). In the instant case, the court is not left with having to guess why the defense attorney did not file a motion to suppress the firearm. During the colloquy between the court and the Defendant at the end of the Defendant's case, after the court had inquired whether or not the Defendant was satisfied with his attorney's representation, the attorney told the court that the Defendant had wanted him to file a motion to suppress the firearm but that he could not file the motion as there was no basis to challenge the search. The trial court agreed with the attorney's decision not to file a motion to suppress and noted that the State's response to such a motion would have been that the search was consensual and that the Defendant had no standing to object to the search.

Although an attorney can always be second-guessed for not doing more, that is not the standard by which counsel's performance is to be evaluated under Strickland. Kilgore v. State, 55 So.3d 487, 500 (Fla. 2010). Instead a defendant must adequately illustrate prejudice suffered as a result of counsel's inaction. Goswick v. State, 658 So.2d 1215, 1216 (Fla.

16

1[st] DCA 1995). In demonstrating prejudice, a defendant must show a reasonable probability that but for counsel's error, the result of the proceeding would have been different. <u>Johnston v. State</u>, 63 So.2d 730, 737 (Fla. 2011), citing <u>Strickland</u> at 694. Accordingly, the State submits that Ground One of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency based on his attorney's failure to file a motion to suppress the firearm because the search was consensual and because the Defendant had no standing to contest the search.

<u>Id.</u> at 49-53 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. <u>Id.</u> at 212.

To the extent that the First DCA denied this claim on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Dean is not entitled to relief on the basis of the ineffectiveness claim.

_____

[4] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record reflects that Little testified at trial that she signed a form allowing officers to search her house. Doc. 11-2 at 105. The State submitted the form as evidence, and Little identified her signature on it. Id. at 105, 117. The form stated that Little voluntarily consented to the search, and officers did not threaten her in any manner. Doc. 11-1 at 186. When counsel inquired on cross-examination about whether officers had threatened or coerced her, Little responded that "[t]hey just said that they had searched the premises because they [were] trying to solve a homicide investigation and – because [she] was a little hesitant on signing it and they said it was interfering with a homicide investigation and [she] told them [she] didn't have nothing to hide." Doc. 11-2 at 118. Little's testimony and the form established that she voluntarily consented to the search, and any motion to suppress on that basis likely would not have merit. Therefore, counsel was not deficient when he failed to raise a meritless claim. See Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

18

In support of his claim, Dean attaches to his Reply an excerpt of Little's sworn statement. Doc. 16-2. There, she stated that officers told her they could notify DCF because they found a gun underneath her couch. Id. at 5. However, even assuming officers made the statement, it would have occurred after officers obtained consent to search inside her house where they found the gun. Moreover, it appears from the limited excerpt provided by Dean that Little alleged officers threatened her so she would appear to give the statement, not to obtain consent to search her house. Id. at 4. Therefore, even considering such evidence, Dean has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance.

Assuming arguendo deficient performance by counsel, Dean has not shown any resulting prejudice. For the reasons discussed above, even if counsel had filed a motion to suppress the gun, the trial court would have denied it. Accordingly, he has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Dean claims he should have. Because he has shown neither deficient performance nor resulting prejudice, Dean's ineffectiveness claim in Ground One is without merit.

19

## B. Ground Two

Next, Dean contends counsel was ineffective when he failed to call alibi witnesses Bernard Jordan and Nardo. Petition at 7. According to Dean, he told counsel that when the offenses occurred, "he was with Bernard Jordan and another man named 'Nardo' partying and drinking beer at Jordan's house." Id. He alleges that Jordan and Nardo would have testified that they were with Dean that night and dropped him off at his house between 12:00 a.m. and 1:00 a.m. Id. Dean asserts both men were available to testify at trial. Id.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 100-01. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State's response stated in pertinent part:

> In the case sub judice, Bernard Jordan was listed as a category A witness. Thus, the defense attorney was aware of Mr. Jordan and had his contact information. Furthermore, the defense had successfully served Mr. Jordan with a subpoena for attendance at the Defendant's trial. Finally, at the end of the Defendant's case, just prior to the colloquy the court had with the Defendant, the defense attorney stated to the court that his investigator spoke to two defense witnesses but the attorney did

20

not believe the witnesses were helpful to the defense in the case and so he chose not to call them. The court asked the attorney if he had discussed that decision with the Defendant and he indicated that he had discussed the decision with the Defendant a few days prior to the trial and briefly during the trial.

In <u>Mendoza v. State</u>, 2012WL635803, 1 (Fla. 3[d] DCA 2012), the appellate court ruled that an ineffective assistance claim for failure to call a witness to testify must be distinguished from an ineffective assistance claim for failure to reasonably investigate and locate witnesses. The court reasoned that unlike the strategic decision to call a witness to testify at trial, the failure to reasonably investigate and locate witnesses can often serve as a colorable claim of ineffective assistance of counsel. <u>Id.</u> However, the court further reasoned that if a reasonable investigation had been conducted, a subsequent decision based on that investigation, such as the decision not to call a particular witness at trial, is presumed to be reasonable and strategic and is 'virtually unchallengeable.' <u>Id.</u> [(]citing <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984)[)] (Emphasis added). The appellate court noted that a defendant can rebut this presumption only by establishing that no competent counsel would have made the same decision. <u>Id.</u> A defendant's claim of ineffective assistance cannot be successful absent a showing of legal incompetence or deficient performance. <u>Bell v. State</u>, 965 So.2d 48, 56 (Fla. 2007).

Additionally, the Defendant's allegation that Mr. Jordan or 'Nardo' would be helpful to his case is speculative because he did not attach an affidavit that demonstrates what the witness' testimony would have been had either of them testified. Allegations about the testimony of a putative witness must

21

generally be presented in the form of actual testimony by the witness, an affidavit or a deposition. Morris v. Secretary, Department of Corrections, 2010WL5330505, 7 (M.D. Fla. 2010). A defendant cannot simply state the testimony would have been favorable without more as such self-serving speculation will not sustain an ineffective assistance claim. Id. Additionally, complaints regarding uncalled witnesses are not favored because allegations of what a witness would have testified to are largely speculative. Coleson v. Crews, 2013 WL 1197729, 33 (N.D. Fla. 2013). In fact, failure to call a witness at trial, absent extraordinary circumstances, is not a ground for collateral attack. Cooley v. State, 642 So.2d 108, 109 (Fla. 3[d] DCA 1994).

Finally, the Defendant agreed with the decision not to call any additional witnesses. At the end of the Defendant's case, the court engaged the Defendant in a colloquy. Specifically, the trial court asked the Defendant a series of questions including whether there were any witnesses the Defendant wanted called and was he happy with the representation up to that point, and he indicated that he was satisfied. The court also asked the Defendant if there were any witnesses that he wanted his attorney to call that had not been called and the Defendant stated no. A defendant is bound by his sworn answers to the court regarding his decision not to call any witnesses. McIndoo v. State, 98 So.3d 640, 641 (Fla. 4[th] DCA 2012). Thus, a defendant may not claim his counsel was ineffective for failing to call a witness when it was the defendant's decision. Hall v. State, 10 So.3d 170, 172 Fla. 5[th] DCA 2009) [(]citing Thomas v. State, 838 So.2d 535, 541 (Fla. 2003)[)]. Likewise, when a court inquires of a defendant on the record, a defendant should not be entitled to go behind the sworn representations made to the court in a post-

conviction proceeding. <u>Stano v. State</u>, 520 So.2d 278, 279-[]80 (Fla. 1988) and <u>Davis v. State</u>, 938 So.2d 555, 557 (Fla. 1[st] DCA 2006). Otherwise, the court reasoned that the trial court would be faced with an unending dilemma when a defendant files a motion that says his prior sworn statements to the court were not true. <u>Id.</u>

Thus, where a defendant makes a clearly and wholly inconsistent affirmance which contradicts his later post-conviction motion, the claim should be summarily denied. <u>Russ v. State</u>, 937 So.2d 1199, 1201 (Fla. 1[st] DCA 2006). A defendant should be bound by his or her sworn answers during a colloquy with the court and should not be able to later disavow those answers. <u>Carrerro-Gomez v. United States</u>, 2012 WL 668307, 7 (S.D. Fla. 2012) and <u>Alfredo v. State</u>, 71 So.3d 138, 139 (Fla. 4[th] DCA 2011). Allowing a defendant to ignore the oath and lie to the court is against public policy and it condones perjury. <u>Iacono v. State</u>, 930 So.2d 829, 830 (Fla. 4[th] DCA 2006). Additionally, a defendant's declarations in open court carry 'a strong presumption of verity' and 'constitute a formidable barrier in any subsequent collateral proceedings.' <u>Paul v. United States</u>, 2014 WL 420694, 7 (S.D. Fla. 2014) and <u>Carrerro-Gomez</u> at 7. Therefore, a defendant should be estopped from receiving an evidentiary hearing on a post-conviction claim when the basis of the claim is that the defendant lied to the court under oath. <u>Polk v. State</u>, 56 So.3d 804 (Fla. 2[d] DCA 2011). Accordingly, the State suggests that Ground Two of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency by his attorney's failure to call Mr. Jordan, a previously listed State witness, and 'Nardo,' as a witness at trial, and has failed to demonstrate prejudice because the allegation is based upon speculation, which

23

> cannot support a finding of ineffectiveness and
> because the Defendant agreed with the decision not
> to call those witnesses at trial.

Id. at 53-56 (record citations omitted) (emphasis deleted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Dean is not entitled to relief on the basis of the ineffectiveness claim.

Even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record reflects that counsel made a strategic decision not to call witnesses, specifically two witnesses that he did not believe would assist the defense. Doc. 11-2 at 456-57; see Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to

24

call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."). Such a decision was reasonable given the evidence presented at trial. Dean alleges Jordan and Nardo would have testified that they were with Dean that evening and dropped him off at his house between 12:00 a.m. and 1:00 a.m. However, the State proposed the murder occurred at 12:30 a.m. Doc. 11-2 at 493. Phone records showed a call between the phone at Little's house and codefendant Dewayne Randall's cell phone at approximately 11:42 p.m. Id. at 195-96. Little testified Dean was at her house that night, and Randall testified he called Dean because he knew that Dean had a gun. Id. at 99-100, 184-85. The State also presented gas station surveillance video in which Dean and Randall purchased beer and cigarettes after the robberies and murder. Id. at 204-06. The video's time stamp showed the two men inside the store at 1:04 a.m. Id. at 205, 296. Given the evidence that conflicted with Jordan and Nardo's alleged testimony, Dean has failed to establish that no competent attorney would have taken the action that his counsel chose.

Even assuming arguendo deficient performance by counsel, Dean has not demonstrated prejudice because the State presented significant evidence implicating Dean. His codefendants, Randall, Jessica White, and Hope

Rappold, testified at trial. Specifically, Randall testified that on that day, he was riding around in a purple Hyundai with White and Rappold. Id. at 182-83. They discussed robbing the occupants of a trailer, and Randall called Dean to get a gun. Id. at 183-84. Randall, White, and Rappold picked up Dean at his house. Id. at 186, 193. When they arrived at the trailer, Randall, Dean, and Rappold went inside, while White stayed in the vehicle. Id. at 194. Randall grabbed a knife off the kitchen sink and threatened a man in one of the rooms. Id. at 197. He punched the man and took a small bag. Id. Randall noted that he wears glasses, and he wore glasses that night. Id. at 198. Dean and Rappold went into another room, and Randall heard Dean ask about money followed by gunshots. Id. at 198-99. Randall, Dean, and Rappold ran out of the trailer and into the vehicle. Id. at 199-200. According to Randall, they drove to a gas station where they bought cigarettes, gas, and beer with the money that they took from the trailer. Id. at 202-03. They then drove to a Coca-Cola plant where Dean's brother worked. Id. at 206-07. Dean attempted to give his brother the gun, but his brother refused to take it. Id. at 207-08. Randall testified Dean took the gun with him when they dropped him off at his house. Id. at 208-09.

White confirmed that she stayed in the vehicle during the robbery. Id. at 248. According to White, when Dean returned to the vehicle, he said "I think I shot him in the head." Id. at 250. Rappold testified that Dean shot one of the trailer's occupants, Gilberto Larios. Id. at 147-48. Another occupant of the trailer, Julio Umberto Aguilar Morales, testified that a woman took his wallet and a man shot Larios. Id. at 63-64. A third occupant, Maynor Chajon, testified that a man with glasses punched him. Id. at 44. According to Chajon, the man had a knife, and he heard gunshots in another part of the trailer when the man with the glasses was with him. Id. at 44, 46-47.

Law enforcement recovered surveillance video from a gas station which showed Randall and Dean inside the store. Id. at 204-06. Dean's brother confirmed that Dean came to the Coca-Cola plant that night in a car with two females and a male. Id. at 234-35. Dean attempted to give him a .357 revolver, but he did not take it. Id. at 236. Officers recovered a .357 revolver from Little's house. Id. at 281-82, 316. A DNA analyst testified that she found a mixed, partial DNA profile on the gun. Id. at 405. She determined that Dean contributed to the mixture but excluded his codefendants as possible contributors. Id. at 406. Considering such evidence, no reasonable probability exists that the outcome of the case would have been different if counsel had

called Jordan and Nardo as witnesses. Because he has shown neither deficient performance nor resulting prejudice, his ineffectiveness claim is without merit. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Two.

### C. Ground Three

As Ground Three, Dean argues counsel was ineffective when he failed to withdraw based on a conflict of interest. Petition at 9. Dean alleges that the Public Defender's Office represented both him and his codefendants. Id. Dean maintains the Public Defender's Office assisted his codefendants in obtaining favorable plea offers in exchange for their testimony against Dean. Id. He argues that counsel should have withdrawn based on the "clear conflict of interest." Id.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 102-04. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State responded in pertinent part:

> The Defendant was arrested on November 20, 2008. Regarding co-defendant [Hope] Rappold, the public defender's office filed a motion to withdraw due to a conflict in representation, which was granted

28

on December 1, 2008, and an attorney from the regional conflict counsel's office was appointed to represent her as of November 24, 2008. Regarding co-defendant [Dewayne] Randall, the public defender's office filed a motion to withdraw due to a conflict in representation, which was granted on December 1, 2008, and Sissy Adams-Jones was appointed to represent him because the office of regional conflict counsel had been appointed to represent co-defendant Rappold. Regarding co-defendant [Jessica] White, the public defender's office filed a motion to withdraw due to a conflict in representation, which was granted on December 15, 2008, and Randy Eler was appointed to represent her. Subsequently, on July 29, 2009, the public defender's office moved to withdraw from Mr. Dean's case, but as noted by the State in its response to the Defendant's motion for a continuance, the motion to withdraw was denied by the trial court.

The right to effective assistance of counsel encompasses the right to representation free from actual conflict. Id. at 791.[5] However, in order to demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. Id. at 792. In other words, the Defendant must show that an actual conflict adversely affected his lawyer's performance. Id. at 791. In the joint representation context, a conflict of interest exists when one co-defendant stands to gain significantly from [the] actions of counsel that harm the interests of another co-defendant. State v. Alexis, 180 So.3d 929, 934 (Fla. 2015). Permitting a single attorney to represent co-defendants does not deny their right to effective counsel per-se. Id. [a]t 935. However, when counsel objects and argues that he believes there is a conflict

---

[5] Hunter v. State, 817 So. 2d 786 (Fla. 2002).

> then the trial court is obligated to either appoint separate counsel, or to ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. <u>Id.</u> at 936. But, a possible, speculative or merely hypothetical conflict is 'insufficient to impugn a criminal conviction.' <u>Id.</u> In the instant case, the Defendant has failed to demonstrate a legal deficiency because he has failed to demonstrate that an actual conflict existed. <u>Mungin v. State</u>, 932 So.2d 986, 1001 (Fla. 2006). Accordingly, the State submits that Ground Three of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency in his attorney's failure to withdraw due to a conflict because all the co-defendants were appointed separate counsel within two to three weeks of the Defendant's arrest.

<u>Id.</u> at 57-58 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. <u>Id.</u> at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Dean is not entitled to relief on the basis of the claim.

Even if the appellate court's adjudication of this claim is not entitled to deference, the claim is meritless. In accordance with Florida law, counsel moved to withdraw from representing Dean on July 29, 2009. Doc. 11-1 at 58-59; see Fla. Stat. § 27.5303(1)(a) ("If, at any time during the representation of two or more defendants, a public defender determines that . . . none can be counseled by the public defender or his or her staff because of a conflict of interest, then the public defender shall file a motion to withdraw and move the court to appoint other counsel.") (emphasis added). However, the trial court denied the motion. Doc. 11-1 at 66. Counsel was not deficient where he attempted to withdraw from representing Dean.

Nevertheless, Dean does not demonstrate that his counsel had an actual conflict of interest at the time of trial or sentencing. See Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 796 (11th Cir. 2020) ("To establish a violation of the defendant's Sixth Amendment right to counsel based on a conflict of interest, a defendant must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected his attorney's performance.") (quotation marks omitted). The Public Defender's Office represented Dean and his codefendants for approximately three weeks in 2008. Docs. 11-1 at 27; 11-4 at 124-26. Dean ultimately

31

proceeded to trial and sentencing in December 2009, at which time the Public Defender's Office did not represent his codefendants. Notably, the Public Defender's Office also did not represent his codefendants when they entered their pleas in January and March 2009. Doc. 11-2 at 163, 178, 241. As such, Dean has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming deficient performance by counsel, Dean has not shown any resulting prejudice. He wholly fails to allege with specificity the manner in which the alleged conflict of interest adversely affected his counsel's representation. See Tuomi, 980 F.3d at 796. Dean's ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Three.

## D. Ground Four

In Ground Four, Dean alleges counsel was ineffective when he failed to object to testimony from Florida Department of Law Enforcement (FDLE) analyst Nicole Lee because the State did not lay a proper predicate for her testimony. Petition at 11. According to Dean, Lee testified that she used a Federal Bureau of Investigation (FBI) database to measure the statistical

32

frequency of Dean's DNA profile. Id. He contends counsel should have objected and requested a Frye[6] hearing based on the absence of testimony verifying the mechanics and accuracy of the database. Id. Dean maintains Lee failed to testify about "how often she used the database, whether or not the software was generally accepted as reliable in the scientific community, or even as to how the database arrives at its conclusions." Id. at 11-12.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 105-10. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State's response stated in pertinent part:

> In the instant case, Ms. Lee was qualified to provide testimony regarding statistical frequencies in the population. Specifically, Ms. Lee testified that she had been employed by the Florida Department of Law Enforcement as a crime laboratory analyst in the biology section since 1997. Ms. Lee testified that she has a bachelor of science degree in the field of clinical lab sciences and that once she was hired by FDLE, she attended two different training programs to qualify as a DNA analyst. She stated that she had been qualified in court as a DNA expert thirty-three times. Subsequent to testifying about her education and training experience, Ms. Lee was tendered as an expert in the area of forensic serology with an

---

[6] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

expertise in DNA testing. Ms. Lee told the jurors that she was able to include the Defendant as a contributor to the DNA mixture found on the firearm used in the murder. Ms. Lee also testified about her experience and training in using the FBI database to determine the frequency at which a DNA profile is expected to exist in the general population. Ms. Lee testified that the FBI [database] is published in the Journal of Forensic Sciences so that any lab has access to it. Ms. Lee told the jury that the FBI database has been validated for use in the forensic science community. Ms. Lee further testified that three races are responsible [sic] in Florida, which are Caucasian, African American, and Southeaster[n] Hispanic. Ms. Lee noted that although she can calculate the population frequency by hand, it is much easier to use the software that was developed to perform the same calculations. Ms. Lee informed the jury that the frequency of occurrence for the mixture would be 1 in 140,000 for Caucasians or 1 in 110,000 for African Americans or 1 in 72,000 for Hispanics. Ms. Lee clarified that the statistic calculated is what is referred to as a random man in the population so if you took a random population, just randomly selected someone, this would be the chance that you would find someone that would match or be included in the mixture.

DNA analysis is a two-step process. First a biochemical analysis determines that two samples are alike. Everett v. State, 893 So.2d 1278, 1281 (Fla. 2004) [(citing Butler v. State, 842 So.2d 817 (Fla. 2003)[)]. Second, statistics are employed to determine the frequency in the population of that profile. Id. Regarding the statistical analysis, a qualified expert must demonstrate a "sufficient knowledge of the database grounded in the study of authoritative sources." Id. However, under Florida law, the expert

34

need not be a statistician himself to testify as to the statistical results. <u>Branch v. State</u>, 952 So.2d 470, 483 (Fla. 2006) [(]citing <u>Darling v. State</u>, 808, So.2d 145, 158 (Fla. 2002)[)]. Furthermore, admissibility is not contingent upon the expert having compiled the database himself. <u>Id.</u> Instead, a sufficient knowledge of the authorities pertinent to the database is an adequate basis on which to render an opinion. <u>Id.</u> Specifically, it is sufficient if the expert testified to work experience in analytical chemistry, attendance at several courses and conferences on population genetics and statistics, previous experience testifying as an expert in the area, use of the product rule in the analysis, testimony that the National Research Council developed the standards and procedures for the analysis, which was accepted internationally as the methodology for such analysis, use of the FBI database for all such analysis, testimony that was specific to segments of the population, such as Caucasians and testimony that her analysis was reviewed twice under FDLE's procedures. <u>Everett</u> at 1281. Likewise, a properly qualified expert on population frequency must be able to show that his or her testimony regarding the statistical methodology used and the database employed was based on established scientific principles in which the analyst was trained. <u>Allen v. State</u>, 62 So.3d 1199, 1201 (Fla. 4[th] DCA 2011). However, the expert does not have to be a statistician or mathematician to testify as to the statistical results. <u>Id.</u>

In the case sub judice, as noted above, the record reflects that Dr. Lee had sufficient knowledge to render an opinion regarding a match and additionally, had an adequate basis on which to render an opinion on the DNA statistics evidence. Thus, an objection would have been without merit. An attorney is not ineffective for failing to make a

35

> meritless objection. <u>Lugo v. State</u>, 2 So.3d 1 (Fla. 2008). Accordingly, the State submits that Ground Four of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency based on his allegation that his attorney failed to object to prejudicial DNA evidence.

<u>Id.</u> at 59-61 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. <u>Id.</u> at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Dean is not entitled to relief on the basis of this ineffectiveness claim.

Moreover, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is meritless. Pursuant to Florida law, an expert need not be a statistician to testify about statistical results. <u>See</u> <u>Darling v. State</u>, 808 So. 2d 145, 158 (Fla. 2002). "[S]ufficient knowledge of the authorities pertinent to the database is an adequate basis on which to

render an opinion." <u>Branch v. State</u>, 952 So. 2d 470, 483 (Fla. 2006) (quotation marks omitted). Here, FDLE analyst Lee testified to her familiarity with the database and its publication in the Journal of Forensic Sciences. Doc. 11-2 at 407. She stated that the database was validated for use in the forensic science community, and she discussed the database's mechanics. <u>Id.</u> at 407-09. Therefore, the State established that Lee had sufficient knowledge to render an opinion such that the trial court would have denied any motion on the proposed basis. <u>See</u> <u>Butler v. State</u>, 842 So. 2d 817, 828 (Fla. 2003) (finding that an expert was qualified to testify about the population frequencies of a DNA profile where even though she did not participate in the database's creation, she was familiar with samples from which the database was created). Counsel was not deficient when he failed to make a meritless objection. <u>See</u> <u>Pinkney</u>, 876 F.3d at 1297. Therefore, Dean is not entitled to federal habeas relief on the claim in Ground Four.

### E. Ground Five

As Ground Five, Dean alleges counsel was ineffective when he failed to ensure Dean was competent before trial and sentencing. Petition at 13. Dean asserts that counsel asked the trial court to appoint an expert to evaluate his competency. <u>Id.</u> According to Dean, a court-appointed expert evaluated him;

however, the expert failed to file a written report, and the trial court did not conduct a competency hearing. Id. Dean avers he was "mentally incompetent at the time of his legal proceedings, that he could not effectively communicate with [c]ounsel as a result of his mental infirmity, and that he did not understand the proceedings against him." Id. at 14.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 111-13. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State's response stated in pertinent part:

> According to the clerk's screen, the Defendant's attorney never filed a motion to have the Defendant evaluated for competency. Rule 3.210(b) states that if, at any material stage of a criminal proceeding, the court has reasonable ground to believe that a defendant is not mentally competent to proceed, the court shall have a hearing to determine the defendant's mental condition. Thompson v. State, 88 So.3d 312, 316-[]17 (Fla. 4[th] DCA 2012) and Fla. Rule of Criminal Procedure 3.210(b). A competency hearing pursuant to Rule 3.210(b) is only required if a bona fide question as to the defendant's competency has been raised. Dessaure v. State, 55 So.3d 478, 483 (Fla. 2010). In contrast, if there is no competency issue raised, the court is without reasonable grounds to hold an evidentiary hearing. Farr v. State, 124 So.3d 766, 784 (Fla. 2012). Conclusory allegations of incompetency, such as the one the Defendant has

made in his Motion, are not enough to warrant an evidentiary hearing. Id., citing Atwater v. State, 788 So.2d 223, 229 (Fla. 2001), wherein the Court held that "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges;" and Medina v. Singletary, 59 F.3d 1095, 1107 (11[th] Cir. 1995), wherein the court held that "[N]either low intelligence, mental deficiency, nor bizarre, volatile and irrational behavior can be equated with mental incompetence to stand trial."

The prejudice standard that applies to a typical claim of ineffective assistance of counsel, whether a reasonable probability exists that the outcome of the proceeding would differ, is ill-suited to a claim of alleged incompetency. Thompson v. State, 88 So.3d 312, 319 (Fla. 4[th] DCA 2012). The issue is not whether, had counsel acted differently, the court would have been required to hold a competency hearing under Rule 3.210. Id. The focus of the prejudice inquiry is on actual prejudice, to-wit: because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated. Id. Thus, a defendant claiming ineffective assistance of counsel for failure to request a competency determination must establish "at least" a reasonable probability that he would have been found incompetent. Id. at 318 and Nelson v. State, 43 So.3d 20, 29 (Fla. 2010).

In order for a defendant to carry this burden, he must set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to his competency. Id. In the case sub judice, although the Defendant claims that his attorney motioned for the court to appoint a psychologist to

> evaluate the Defendant for competency, no such motion is noted in the clerk's file. Additionally, although the Defendant claims the court approved the request, no such order is noted in the clerk's file. Thus, in the instant case, there is no evidence to corroborate the Defendant's conclusory allegation that he was incompetent. Accordingly, the State submits that Ground Five of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency, or prejudice to himself, due to his attorney's failure to ensure the Defendant was competent as there is nothing in the record that corroborates that competency was an issue.

Id. at 62-63 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Dean is not entitled to relief on the basis of the ineffectiveness claim.

Here, even if the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit. The record does not contain any evidence supporting Dean's contention that counsel sought appointment of a mental health expert or that the trial court appointed an expert to evaluate Dean. Notably, during the trial court's colloquy with Dean concerning his right to testify, Dean answered questions coherently and appeared to understand the proceedings. Doc. 11-2 at 479-81. On this record, the Court presumes that counsel made a reasonable decision not to investigate Dean's competency or to pursue a competency hearing. See Chandler v. United States, 218 F.3d 1305, 1324 (11th Cir. 2000) ("[G]iven the absence of evidence in the record, we must assume counsel carried out his professional responsibility and discussed mitigation with his client.") (citing Williams v. Head, 185 F.3d 1223, 1235 (11th Cir. 1999)). Dean points to no evidence in support of his claim other than his conclusory allegations of incompetency. He has failed to carry his burden of overcoming the presumption that counsel's decision not to pursue a competency hearing was reasonable. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Five.

41

## F. Ground Six

Next, Dean contends counsel was ineffective when he misadvised Dean about his right to a speedy trial and waived his right to a twelve-person jury. Petition at 15. According to Dean, he waived speedy trial on February 25, 2009, because counsel advised him that the State would agree not to seek the death penalty. Id. at 15-16. However, he asserts that, despite this, the State filed a notice of intent to seek the death penalty on May 21, 2009. Id. at 16. Dean argues the State had "ample time" to obtain the testimony of his codefendants and to obtain DNA evidence because of counsel's erroneous advice. Id. He maintains the State later used waiver of the death penalty as an incentive to cause Dean to waive his right to a twelve-person jury. Id.

Dean raised a substantially similar claim in his Rule 3.850 motion. Doc. 11-3 at 111-13. In denying relief, the postconviction court attached the State's response as an exhibit and "incorporate[d] by reference all exhibits and transcripts cited [there]in." Doc. 11-4 at 41. The State's response stated in pertinent part:

> In the case sub judice, on February 25, 2009, the defense attorney tendered to the court a waiver of speedy trial, which he stated he had discussed with the Defendant. Then, on October 7, 2009, during a pre-trial, the prosecutor told the court that he and the defense had agreed in principle that the State

would waive the previously filed death penalty notice and the Defendant would waive a twelve-person jury. The prosecutor told the court that the defense attorney would reduce the agreement to writing and file it at the final pre-trial. On November 19, 2009, which was the final pre-trial, the defense attorney noted that the agreement had been reduced to writing. The trial court put the Defendant under oath and inquired if he understood that he had a right to a twelve-person jury and that he was waiving that right in lieu of the State waiving the death penalty. The Defendant stated that he understood and that he had talked to his attorney about the waiver, his attorney had answered all of his questions and he agreed with the waiver.

A claim of ineffective assistance of counsel based on a failure to assert a movant's speedy trial rights under rule 3.191 requires that a movant show that trial counsel made an unreasonable decision not to pursue a movant's speedy trial rights. Remak v. State, ---So.3d---, 2014WL2118038, 2 (Fla. 2[d] DCA 2014). Otherwise, if a defense attorney requests a continuance because he is not ready, even if over the client's objection, speedy trial is waived. Randall v. State, 938 So.2d 542, 544 (Fla. 1[st] DCA 2006). Furthermore, the acts of an attorney on behalf of a client will be binding on the client even though done without consulting him and even against the client's wishes. Id. A motion for a continuance is a decision to be made by the attorney, even if the client objects. Charlot v. State, 85 So.3d 1176, 1177 (Fla. 4[th] DCA 2012) [()citing Laidler v. State, 10 So.3d 1136, 1138 (Fla. 1[st] DCA 2009)]]. Although involving a motion for discharge, it was held that whether it was reasonable for a defendant's attorney to file a motion for discharge pursuant to rule 3.191 is not the same as whether it was possible, prudent or even

43

appropriate. Blackmon v. Pippin, 2011WL2445977 (N.D. Fla. 2011) [(]citing Chandler v. U.S., 218 F.3d 1305, 1313 (11[th] Cir. 2000)[)]. A trial court should not be concerned with whether filing such a motion was 'constitutionally compelled.' Id. Even if many reasonable lawyers would not have done as defense counsel did, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the same circumstances, would have done so. Chandler at 1314. The critical test is whether the adversarial process worked adequately, not whether counsel could have done more. White v. Singletary, 972[]F.3d 1218, 1221 (11[th] Cir. 1992) and Waters v. Thomas, 46 F.3d 1506, 1518 (11[th] Cir. 1995). The Constitution requires a good deal less than maximum performance. Atkins v. Singletary, 965 F.2d 952, 960 (11[th] Cir. 1992).

Furthermore, although the Defendant waived his speedy trial rights in February, and the State did not waive the death penalty until October and November, the Defendant got the benefit he bargained for, which was that the State waived the death penalty. Thus, the Defendant cannot demonstrate prejudice in his attorney's waiver of his speedy trial rights in order to obtain a waiver of the death penalty. A claim of ineffective assistance fails if a defendant cannot demonstrate prejudice. McCoy v. State, 598 So.2d 169, 172 (Fla. 1[st] DCA 1992). Accordingly, the State submits that Ground Six of the Defendant's Motion may be summarily denied as the Defendant has failed to demonstrate a legal deficiency by his attorney, or prejudice to himself, based on his allegation that his attorney misadvised him regarding his speedy trial rights.

Case 3:19-cv-01191-MMH-MCR   Document 19   Filed 12/02/22   Page 45 of 57 PageID 1788


Id. at 64-66 (record citations omitted). The First DCA per curiam affirmed the postconviction court's denial of relief without a written opinion. Id. at 212.

To the extent that the First DCA denied this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Dean is not entitled to relief on the basis of the ineffectiveness claim.

Even assuming the appellate court's adjudication of this claim is not entitled to deference, the claim is without merit because Dean does not demonstrate prejudice. Dean only speculates that the State could not have obtained an indictment for first-degree murder in February 2009. Habeas relief cannot be based on speculation. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Fayson v. Sec'y, Fla. Dep't of Corr., 568 F. App'x 771, 774 (11th Cir. 2014) (finding petitioner could not demonstrate prejudice

45

where "he merely speculate[d] that, had counsel not waived his speedy trial right, the state would have been unable to procure key witnesses for trial").[7]

Notably, the record shows that the State had obtained significant physical evidence and witness statements well before February 2009. On November 19, 2008, officers searched Little's house and found a gun. Doc. 11-2 at 104. On December 11, 2008, the Stated filed an initial discovery disclosure that included sworn statements from Little; an audio recording of an interview with Dean's brother who testified at trial that Dean attempted to give a gun to him after the murder; surveillance video from the gas station; and recordings of interviews with Dean's codefendants. Doc. 11-1 at 33. As such, Dean cannot demonstrate prejudice, and relief on the claim in Ground Six is due to be denied. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

### G. Ground Seven

In Ground Seven, Dean alleges counsel was ineffective when he failed to file a motion to suppress the gun recovered due to an invalid search warrant. Petition at 18. According to Dean, law enforcement officers obtained the search warrant for Little's house based on a probable cause affidavit that contained the false testimony of his codefendant, Jessica White. Id. at 18. He further argues the warrant only allowed officers to search the detached garage on his property, but officers impermissibly broadened the scope of the search to his house. Id. at 19.

The Court finds Dean did not properly exhaust the claims raised in Ground Seven. While Dean raised the claims in his second amended Rule 3.850 motion, Doc. 11-3 at 126-31, the postconviction court dismissed them as untimely filed, id. at 180-81. See Fla. R. Crim. P. 3.850(e) ("New claims for relief contained in an amendment need not be considered by the court unless the amendment is filed within the [two-year] time frame. . . ."). Therefore, his claims are procedurally barred for purposes of federal habeas review. Because any future attempt to exhaust these claims would be futile, they are procedurally defaulted. In an effort to avoid the bar, Dean cites Martinez v. Ryan, 566 U.S. 1 (2012), and argues that his lack of postconviction counsel

47

constitutes cause and prejudice to overcome the procedural bar. Petition at

20. The Eleventh Circuit has explained the holding of <u>Martinez</u> as follows:

> In <u>Martinez</u>, the U.S. Supreme Court enunciated a
> narrow exception to the general rule that the lack of
> an attorney or attorney error in state post-conviction
> proceedings does not establish cause to excuse the
> procedural default of a substantive claim. 566 U.S. at
> 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme
> Court, however, set strict parameters on the
> application of this exception. It applies only where (1)
> state law requires a prisoner to raise ineffective-trial-
> counsel claims during an initial collateral proceeding
> and precludes those claims during direct appeal; (2)
> the prisoner failed to properly raise ineffective-trial-
> counsel claims during the initial collateral
> proceeding; (3) the prisoner either did not have
> counsel or his counsel was ineffective during those
> initial state collateral proceedings; and (4) failing to
> excuse the prisoner's procedural default would result
> in the loss of a "substantial" ineffective-trial-counsel
> claim. <u>Id.</u> at 14, 132 S.Ct. at 1318; <u>see also</u> <u>Arthur v.</u>
> <u>Thomas</u>, 739 F.3d 611, 629 (11th Cir. 2014) (setting
> forth the <u>Martinez</u> requirements).

<u>Lambrix v. Sec'y, Fla. Dep't of Corr.</u>, 851 F.3d 1158, 1164 (11th Cir. 2017). A

claim is substantial if the petitioner demonstrates it "has some merit."

<u>Martinez</u>, 566 U.S. at 14.

Considering the record, the Court determines Dean has not shown that

the underlying ineffective assistance of counsel claims are substantial.

Officers did not search Little's house pursuant to a warrant when they found

the gun. Doc. 11-2 at 105-06, 318. They instead obtained Little's voluntary consent. Docs. 11-1 at 186; 11-2 at 105. As such, a motion to suppress the gun based an improper search warrant would not have merit. Counsel was not deficient when he failed to raise a meritless claim. See Pinkney, 876 F.3d at 1297. For the same reasons, Dean has not shown any resulting prejudice. Because Dean can show neither deficient performance nor prejudice, the Court finds that his claims are not substantial such that his failure to exhaust them should be excused under Martinez. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Seven.

### H. Ground Eight

Next, Dean contends counsel was ineffective when he failed to object to Dean's arrest. Petition at 21. According to Dean, officers arrested him without a warrant when they arrived to search the residence. Id. Dean argues that as a result of his invalid arrest, he "was unable to exercise his right to not give permission for the police to search the residence without a warrant." Id.

The Court finds Dean did not properly exhaust the claim raised in Ground Eight. As with the claim in Ground Seven, Dean raised the claim in his second amended Rule 3.850 motion, Doc. 11-3 at 132-35; however, the

49

postconviction court dismissed it as untimely filed, id. at 180-81. See Fla. R. Crim. P. 3.850(e). Therefore, his claim is procedurally barred. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. To avoid the bar, Dean again cites <u>Martinez</u> and argues that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Petition at 24.

Based on the record, Dean fails to demonstrate that his underlying ineffective assistance of counsel claim is substantial. Probable cause must support a warrantless arrest. <u>State v. Cuomo</u>, 43 So. 3d 838, 841 (Fla. 1st DCA 2010). "To establish probable cause, the State must demonstrate that an officer had reasonable grounds to believe that the arrestee committed the crime." <u>Id.</u> Here, officers had probable cause to detain Dean on November 20, 2008, when they searched Little's house. Sergeant David Coarsey possessed information that Dean murdered the victim from Detective Don Alexander's interviews with codefendants White and Rappold. Doc. 11-2 at 319. According to Detective Alexander, White immediately admitted that she knew information about the robberies and murder when he interviewed her. <u>Id.</u> at 344. White told Detective Alexander that she, Rappold, and Randall picked up a man named Mike before they proceeded to the trailer where they robbed

its occupants. <u>Id.</u> White identified a photograph of Dean as Mike. <u>Id.</u> at 346-47. She maintained they drove a purple Hyundai that night and Mike shot the victim. <u>Id.</u> at 344-45. White stated that they then drove to the Coca-Cola plant, where Mike's brother worked, so Mike could dispose of the gun. <u>Id.</u> at 345-46. White also directed Detective Alexander to Little's house where she, Rappold, and Randall had picked up Mike that night. <u>Id.</u> at 346.

Before he searched Little's house and detained Dean, Sergeant Coarsey also obtained information about Dean's involvement in the offenses from Detective Alexander's interview with Rappold. <u>Id.</u> at 319. Officers apprehended Rappold and Randall in a purple Hyundai. <u>Id.</u> at 349. Rappold told Detective Alexander during her interview that she was with White, Randall, and Mike on the night of the robbery and murder. <u>Id.</u> at 351. She identified a photograph of Dean as Mike. <u>Id.</u> Rappold explained that they picked up Mike from a house before they drove to the trailer. <u>Id.</u> at 352. Rappold admitted she took a wallet during the incident, and she identified Mike as the shooter. <u>Id.</u> According to Rappold, the group then stopped at a gas station and a Coca-Cola plant, where Mike attempted to dispose of the gun. <u>Id.</u> at 352-53. Based on such evidence, Sergeant Coarsey had probable

51

cause to detain Dean when he arrived at Little's house.[8] As such, counsel was not deficient when he failed to pursue a meritless claim. See Pinkney, 876 F.3d at 1297.

Even assuming arguendo deficient performance by counsel, Dean has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Dean claims he should have. His ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Eight.

## I. Ground Nine

Lastly, Dean asserts counsel was ineffective when he failed to call "exculpatory" witness Heather Gwin. Petition at 23. He avers Gwin initially gave a statement to law enforcement that on the day after the offenses, "Randall was still out riding in a stolen vehicle and robbing people for their money." Id. at 24. According to Gwin, Randall admitted to killing people in the past. Id. Dean argues that counsel should have called Gwin as a witness

---

[8] The Court notes that pursuant to Florida Rule of Criminal Procedure 3.131, the trial court found probable cause to detain Dean pending further proceedings on November 21, 2008. Doc. 11-1 at 29.

so the jury would know "Randall was still out committing similar crimes that resulted in the victim's death." Id.

The Court finds Dean did not properly exhaust the claim raised in Ground Nine. Dean raised the claim in his second amended Rule 3.850 motion, Doc. 11-3 at 135-37, which the postconviction court dismissed as untimely filed, id. at 180-81. See Fla. R. Crim. P. 3.850(e). For this reason, this claim is barred from federal habeas review. Because any future attempt to exhaust the claim would be futile, it is procedurally defaulted. Dean cites Martinez and argues that his lack of postconviction counsel constitutes cause and prejudice to overcome the procedural bar. Petition at 25. This contention is without merit.

The record fails to support a finding that Dean's alleged underlying claim is substantial. Indeed, counsel was not deficient when he failed to call Gwin as a witness because her testimony about another person's statement would constitute impermissible hearsay. To the extent Dean argues Gwin could provide reverse Williams Rule evidence,[9] her alleged testimony would

---

[9] Pursuant to Florida law, a defendant may present proof of third-party guilt, or "reverse Williams Rule" evidence. See Rivera v. State, 561 So. 2d 536, 539 (Fla. 1990). Evidence of a third-party's past criminal conduct must bear "a close similarity of facts, a unique or 'fingerprint' type of information, for the evidence to be relevant." State v. Savino, 567 So. 2d 892, 894 (Fla. 1990). Moreover, its admission is circumscribed by the trial judge's evaluation of the evidence's

not have met the standard for admissibility. According to Dean, Gwin would have testified that "Randall was still out riding in a stolen vehicle and robbing people for their money." Petition at 24. She also would have stated that Randall killed people in the past. Id. However, such testimony about general criminal conduct does not establish relevancy, or a sufficient similarity in fact to the robbery and murder in the instant case. See State v. Savino, 567 So. 2d 892, 894 (Fla. 1990). Therefore, counsel was not deficient when he failed to call Gwin as a witness.

Even assuming arguendo deficient performance by counsel, Dean has not shown any resulting prejudice. Based on the evidence presented at trial as detailed in Ground Two, Dean has not shown a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Dean claims he should have. His ineffectiveness claim is without merit because he has shown neither deficient performance nor resulting prejudice. Accordingly, Dean is not entitled to federal habeas relief on the claim in Ground Nine.

---

"[r]elevance and weighing the probative value of the evidence against the possible prejudicial effect . . . ." Id.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Dean seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dean "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

55

debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Dean appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of December, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 11/16
C:     Shameen A. Dean #354043
         Counsel of record

57